UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
MICHEAL TIMMER,

                Plaintiff,

            - against -

THE CITY UNIVERSITY OF NEW YORK,

                Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**

20-CV-02554 (PKC) (RLM)

PAMELA K. CHEN, United States District Judge:

In an Amended Complaint filed on December 30, 2020, Plaintiff Micheal Timmer sued his employer, The City University of New York ("CUNY"), for race discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and for disability discrimination, retaliation, and hostile work environment under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Now before the Court is Defendant's motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  The Court grants Defendant's motion in part and denies it in part.

## BACKGROUND

### I.    Factual Background

The Amended Complaint alleges the following facts, which the Court accepts as true for purposes of this motion.  *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012).[1]

---

[1] Plaintiff notes that he "has had several work-related, on-the-job injuries for which he has sought medical treatment and filed workers compensation claims."  (Amended Complaint, Dkt. 16, ¶ 22.)  The disability claims in the Amended Complaint appear to involve only Plaintiff's foot condition, however, and in his response to Defendant's letter seeking a pre-motion conference, he notes that his "disability is the percentage loss of use of his left foot."  (Plaintiff's Response, Dkt. 22, at ECF 3.)

Plaintiff, a Black man, lives in Kings County, New York.  (Amended Complaint ("Am. Compl."), Dkt. 16, ¶¶ 10, 17.)  Since 2001, he has been an employee of CUNY, which "operates the New York City College of Technology, a four-year college . . . located at 300 Jay Street, Brooklyn, NY 11201" ("City Tech"), and which receives Federal, State, and City funding.  (*Id.* ¶¶ 11, 13–17); *see also* About Us, New York City College of Technology, https://www.citytech.cuny.edu/ (last visited August 13, 2021).

In 2007, Plaintiff was promoted to the position of Peace Officer.  (Am. Compl., Dkt. 16, ¶ 20.)  His duties include "patrolling campus grounds, opening and closing doors, responding to complaints and emergencies, taking information and making reports, signing in guests, and regulating access and entrances and exits."  (*Id.* ¶ 21.)  "Plaintiff's duties sometimes require standing for long periods of time . . . ."  (*Id.* ¶ 26.)  During the events described in the Amended Complaint, Plaintiff reported to Lieutenants Efren Maldonado and Jessica Marrero, "both of whom are Hispanic."  (*Id.* ¶ 30.)  At times, Plaintiff also reported to Sergeant Chantel Jenkins.  (*Id.* ¶ 31.)

Plaintiff's ability to stand is "substantially limited" by a cyst in his left foot.  (*Id.* ¶ 12.)  In 2019, a Workers Compensation Judge determined that Plaintiff had lost 20% of the use of his left foot.  (*Id.* ¶ 25.)  Defendant received notice of this decision.  (*Id.*)  Because Plaintiff's duties sometimes require standing, his left foot condition causes him "extreme pain in his left foot and leg." (*Id.* ¶ 26.)  This "substantially limit[s] his ability to stand and walk." (*Id.* ¶ 62.)  "Sometimes, while working, Plaintiff's left foot would go numb with tingling . . . , causing the severe pain." (*Id.* ¶ 63.)

Plaintiff has received medical treatment for his foot, and doctors have "not[ed] that he would sometimes need to sit to relieve some of the pain."  (*Id.* ¶ 64.)  Doctors have prescribed Plaintiff 800mg ibuprofen, and he has "us[ed] sleeping pills (Zolpidem) to sleep during the day"

when he worked the night shift. (*Id.* ¶ 65.) "[D]ue to medications he was taking," Plaintiff "suffered from incontinence" (*id.* ¶ 12), "especially during colder weather months or colder conditions at work" (*id.* ¶ 84). Despite his injuries and medications, Plaintiff has remained qualified to perform his job "and remains a well-liked and respected employee." (*Id.* ¶¶ 27–29.)

### A.    Plaintiff's Past Workplace Discrimination Complaints

In 2011, Plaintiff filed a complaint against another Lieutenant, Lieutenant Lionel Presume, "for gender discrimination in favor[ing] female sergeants over male sergeants," and for "harassment and bullying of Plaintiff." (*Id.* ¶ 33–34.) In 2013, Plaintiff "documented to his union agent . . . that he felt as though [Presume's] gender bias, harassment, and bullying had prevented Plaintiff from receiving a promotion to sergeant sooner." (*Id.* ¶ 35.)

In August 2015, Maldonado announced during a roll call meeting that all chairs at Peace Officer posts were being removed. (*Id.* ¶ 36.) Plaintiff "immediately stated" that this was retaliation for his request "to be relieved from duty [approximately a month before] due to experiencing severe pain in his right hand and arm" and his "complaining about Defendant's failures to relieve him from duty." (*Id.*)

The next day, Plaintiff complained to Defendant's "Diversity Officer" "about the hostile work environment and retaliation he was experiencing from [] Maldonado and [] Presume." (*Id.* ¶ 37.) "Shortly after this complaint," Maldonado "called Plaintiff into his office and disciplined Plaintiff through a counseling letter." (*Id.* ¶ 38.) Maldonado also questioned Plaintiff about his "lateness to work" and "threatened Plaintiff that if he did not give the reason behind his lateness, he would not receive a leave of absence in the future." (*Id.* ¶¶ 39–40.)

In October 2015, Plaintiff submitted a complaint regarding the August 2015 incidents to his union officials. (*Id.* ¶ 41.) The complaint "detail[ed] the hostile work environment and retaliation perpetrated by [] Maldonado and Presume." (*Id.*)

3

### B.      Plaintiff's Denial of Vacation and His Subsequent Complaint

In December 2018, Maldonado denied Plaintiff's request for approval of a vacation day.
(*Id.* ¶ 45.)  Plaintiff resubmitted the request to Marrero, who "communicated with" Maldonado
and "likewise denied Plaintiff's request."  (*Id.* ¶¶ 45–47.)  Marrero told Plaintiff the request was
denied because Maldonado was on vacation.  (*Id.* ¶ 47.)

A Hispanic employee, Jordan Solar, who had just been hired, "was given approval for
vacation instead of Plaintiff."  (*Id.* ¶¶ 49, 52.)  "Solar, a Campus Security Assistant [], performed
some of the same duties as Plaintiff."  (*Id.* ¶ 50.)  Plaintiff heard Solar say that Maldonado had
approved his vacation request "even though it was during the same period requested by Plaintiff."
(*Id.* ¶ 51.)  "At roll call . . . on January 19, 2019, Plaintiff openly verbally complained about
discriminatory conduct that he had been experiencing, i.e. that [] Maldonado and [] Marrero denied
his vacation requests in favor of other Hispanic officers because of Plaintiff's race."  (*Id.* ¶ 79.)

A deadline of January 19, 2019 was set for submitting vacation requests.  (*Id.* ¶ 53.)  A
less-senior Campus Peace Officer, "Maxil," who is also Hispanic, submitted a request for vacation
after the deadline.  (*Id.* ¶¶ 54, 56.)  The request "was originally denied," but "Maxil resubmitted
the request to [] Marrero and it was subsequently approved after the January 19 deadline."  (*Id.* ¶
54.)  "[W]hile [] Marrero told Plaintiff that she had to discuss Plaintiff's request for vacation with
[] Maldonado prior to deciding on whether to grant or deny the request, [] Marrero did not
communicate with [] Maldonado in granting Maxil's request."  (*Id.* ¶ 55.)

### C.      Plaintiff's Denial of Accommodations and His Subsequent Complaints

"On or about January 17, 2019, while Plaintiff was at his post, [] Maldonado approached
Plaintiff and asked why he was sitting."  (*Id.* ¶ 71.)  "Plaintiff reminded [] Maldonado of his [foot
condition] and requested . . . that he be permitted to use a chair throughout the day [to] sit down
intermittently."  (*Id.* ¶ 72.)  Although "Plaintiff previously worked the same exact position on the

night shift and had been permitted to use a chair by other supervisors" (*id.* ¶ 74), Maldonado denied Plaintiff's request (*id.* ¶ 76).

At the January 19, 2019 roll call, "Plaintiff openly verbally complained about discriminatory conduct that he had been experiencing, i.e. that [] Maldonado and [] Marrero denied his vacation requests in favor of other Hispanic officers because of Plaintiff's race" and that Maldonado "had been harassing him by denying [his] request for accommodation and removing the chair he needed at his post." (*Id.* ¶ 79.) "Marrero approached Plaintiff and asked if he wanted to submit a written statement of his complaint . . . ." (*Id.* ¶ 80.) "Plaintiff agreed and submitted a written statement" to Defendant's[2] Director of Public Safety. (*Id.*)

On January 30, 2019, Plaintiff called dispatch for two breaks, both of which were approved. (*Id.* ¶ 81.) Although "Plaintiff was entitled to these two breaks" (*id.*), "[a]fter his second break, [] Jenkins called Plaintiff and threatened that if he took another break, he would be written up" (*id.* ¶ 82). Either Maldonado or Marrero instructed Jenkins to make the call. (*Id.* ¶ 83.)

Plaintiff, who suffers from incontinence, contacted Defendant's Human Resources ("HR") Director and asked for another break, explaining that he needed to use the bathroom immediately or he was "going to soil [him]self." (*Id.* ¶¶ 86–90.) Plaintiff was not granted permission to use the bathroom and "ended up soiling himself at his post." (*Id.* ¶ 91.) Plaintiff contacted dispatch and explained what had happened, then, "[h]umiliated and embarrassed," he went on break for a meal and to clean himself. (*Id.* ¶¶ 92–93.)

---

[2] Although the Amended Complaint refers to "Defendant" CUNY's Director of Public Safety and Human Resources Director, it is unclear whether these officials worked in CUNY's central office or at City Tech.

### D.    Plaintiff's Disciplinary Proceedings

When Plaintiff returned from his break on January 30, 2019, Maldonado called him and told him to report to "the office." (*Id.* ¶ 94.)  Maldonado and the HR Director gave Plaintiff a letter telling him he was suspended for 30 days "pending investigation and subject to termination." (*Id.* ¶ 96.)

In March 2019, "Defendant proffered . . . charges against Plaintiff, claiming he exposed himself and urinat[ed] at his post." (*Id.* ¶ 100.)  These charges "were based on deduction from statements made by non-eyewitnesses." (*Id.* ¶ 101.)  "Plaintiff never exposed himself at any time while on duty." (*Id.*)  Defendant ultimately required Plaintiff to attend a disciplinary hearing before an independent arbitrator, after which Plaintiff was permitted to return to work. (*Id.* ¶¶ 104–05.)

## II.    Procedural Background

On June 8, 2020, Plaintiff sued Defendant for claims related to the allegations in the Amended Complaint. (*See* Original Complaint, Dkt. 1.)  The Court held a pre-motion conference on November 17, 2020, at which Plaintiff agreed to dismiss several of his claims as barred by sovereign immunity. (*See* 11/17/2020 Minute Entry.)  On December 30, 2020, Plaintiff filed an Amended Complaint alleging race discrimination, retaliation, and hostile work environment under Title VII, and for disability discrimination, retaliation, and hostile work environment under Section 504 of the Rehabilitation Act. (*See* Am. Compl., Dkt. 16.)

On January 27, 2021, Defendant filed a letter requesting a pre-motion conference to move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (*See* (Defendant's Motion to Dismiss ("Def.'s Mot."), Dkt. 17.)  Plaintiff filed a response to the letter. (*See* Dkt. 17.)  The Court construed the letter as a motion to dismiss and ordered supplemental briefing. (*See* 2/18/2021 Docket Order.)  Defendant filed a reply to Plaintiff's response letter

(Defendant's Reply ("Def.'s Reply"), Dkt. 21), and Plaintiff filed a response to Defendant's reply (*see* Plaintiff's Response ("Pl.'s Resp."), Dkt. 22).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

## DISCUSSION

### I.    Title VII Discrimination

Plaintiff alleges Defendant discriminated against him based on race in violation of Title VII. Defendant moves to dismiss Plaintiff's Title VII discrimination claim on the grounds that he fails to identify an adverse employment action or allege facts that give rise to a plausible inference of discrimination.

A.     **Legal Standard**

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–2(a)(1)).  "Title VII thus requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Id.*

"As to the first element, an employer discriminates against a plaintiff by taking an adverse employment action against him." *Id.*  "As to the second element, an action is 'because of' a plaintiff's race, color, religion, sex, or national origin where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." *Id.* at 85 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 249 (1989) (plurality)).  "Under *Iqbal* and *Twombly*, then, in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id.* at 86.[3]

---

[3] Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to survive summary judgment a plaintiff must show that "(1) she is a member of a protected class, (2) she was qualified for the job at issue, (3) she was subjected to an adverse employment action, and (4) the circumstances of that adverse action give rise to an inference of discrimination based on her class membership." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019).  But "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss." *Vega*, 801 F.3d at 84.  "Rather, because a temporary 'presumption' of discriminatory motivation is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Id.* (quotations omitted).

1.     Adverse Employment Action

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Id.* at 85 (quotations omitted). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quotations omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (quotations omitted).

Courts in this Circuit have found that suspensions without pay can be adverse employment actions. *See, e.g.*, *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223–24 (2d Cir. 2001) (finding a suspension without pay for one week to be an adverse employment action).[4] Likewise, "[i]t is well-settled that disciplinary charges are considered adverse employment actions . . . ." *Chapman v. City of New York*, No. 06-CV-3153 (ENV) (JMA), 2011 WL 1240001, at *6 (E.D.N.Y. Mar. 30, 2011).

By contrast, "the denial of vacation time does not generally rise to the level of an adverse employment action." *Chukwuka v. City of New York*, 795 F. Supp. 2d 256, 261 (S.D.N.Y. 2011) (citation omitted), *aff'd*, 513 F. App'x 34 (2d Cir. 2013). "Moreover, the denial of a single vacation

---

[4] *See also Eka v. Brookdale Hosp. Med. Ctr.*, 247 F. Supp. 3d 250, 264 (E.D.N.Y. 2017) ("Plaintiff's 2009 six-week suspension without pay . . . was a materially adverse change in the conditions of his employment."); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 306 (E.D.N.Y. 2014) (finding that a suspension without pay while the employee was investigated for fraud was an adverse employment action); *Hill v. Rayboy–Brauestein*, 467 F. Supp. 2d 336, 355–56 (S.D.N.Y. 2006) ("Plaintiff's ten-day suspension [without pay] is an adverse employment action, as it is a material alteration of Plaintiff's working conditions."); *Hughes v. City of Rochester*, No. 12-CV-6112, 2016 WL 4742321, at *6 (W.D.N.Y. Sept. 12, 2016) (finding, in a Title VII disparate impact case, that an employer's decision to place plaintiff on unpaid leave was an adverse employment action).

request, without any indication that there was an absolute prohibition against plaintiff taking any vacation time, is not a material adverse employment action." *Id.* (quotations omitted); *see also Jackson v. Syracuse Newspapers*, 574 F. App'x 36, 37 (2d Cir. 2014) (summary order) (noting that "the denial of requested additional vacation days" did "not amount to [an] adverse employment action[]").

Finally, "[w]hile courts may consider the underlying conduct of an alleged failure to accommodate, a failure to accommodate, by itself, is not sufficient for purposes of establishing an adverse employment action." *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 496 (E.D.N.Y. 2019) (quotations omitted); *see also Shields v. NYC Health & Hosps. Corp.*, 489 F. Supp. 3d 155, 164 n.4 (E.D.N.Y. 2020) (noting that "the denial of an accommodation is not itself an adverse employment action providing a basis for a claim for discrimination"); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72 (2d Cir. 2019) (finding that the plaintiff's "claim that he was denied breaks to go home and take his medicine and go to the pharmacy, even if related to his disability, [did] not rise to the level of a material adverse employment action," because "[b]eing unable to take a break twice is not the type of demotion, pay cut, or significantly diminished responsibility that are the tell-tale signs of material adverse employment actions").

## 2. Inference of Discrimination

In assessing a motion to dismiss a Title VII discrimination claim under Rule 12(b)(6), the Court must consider "whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination." *Vega*, 801 F.3d at 87. "In making the plausibility determination, the court must be mindful of the 'elusive' nature of intentional discrimination." *Id.* (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 n.8 (1981)). "[A]t the initial stage of a litigation, the plaintiff's burden is 'minimal'—he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by

discriminatory intent.'" *Id.* at 86–87 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

"An inference of discrimination can arise from circumstances including, but not limited to": (1) "the employer's criticism of the plaintiff's performance in ethnically degrading terms;" (2) "its invidious comments about others in the employee's protected group;" (3) "the more favorable treatment of employees not in the protected group;" or (4) "the sequence of events leading to the [adverse action]." *Littlejohn*, 795 F.3d at 312 (quotations omitted). "To establish an inference of discrimination" based on disparate treatment of similarly-situated employees, "a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quotations omitted).

As noted, courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). Thus, "[n]aked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 220 (E.D.N.Y. 2018) (quotations and alterations omitted); *accord Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006) (affirming dismissal where the "complaint proffer[ed] only a conclusory allegation of discrimination").

### B.      Plaintiff Fails to State a Title VII Discrimination Claim

The Amended Complaint alleges that Plaintiff was (and is) qualified for his position (Am. Compl., Dkt. 16, ¶ 115); that Defendant threatened Plaintiff, suspended him, and held disciplinary hearings "attempting to terminate" him (*id.* ¶ 116); that "Defendant denied Plaintiff's request for [a disability] accommodation" (*id.* ¶ 118); and that "Defendant treated Plaintiff, a Black man,

11

differently due to his race in that his superiors, both of whom are Hispanic, denied [his] requested vacation in favor of two less-senior Hispanic officers" (*id.* ¶ 117).

Plaintiff's claims regarding his suspension, disciplinary hearings, termination attempts, and denials of accommodation fail because he does not allege facts to "plausibly give rise to an inference of unlawful [race] discrimination" with respect to those allegations. *See Vega*, 801 F.3d at 87 (emphasis removed). The Amended Complaint offers only conclusory assertions regarding Defendant's allegedly racially discriminatory motivation. (*See* Am. Compl., Dkt. 16, ¶ 102 ("[T]he disciplinary charges came as a result of anti-black animus"); *id.* ¶ 43 ("Plaintiff [] experienced and perceived his work environment as permeated with discriminatory animus"); *id.* ¶ 44 (Defendant "exhibit[ed] discriminatory animus toward[] Plaintiff due to his race"); *id.* ¶ 57 (Plaintiff's supervisors "targeted Plaintiff for negative treatment based on Plaintiff's race"); *id.* ¶ 118 ("Defendant denied Plaintiff's request for accommodation to use a chair at his post due to the anti-Black animus exhibited towards Plaintiff by his superiors"); *id.* ¶ 119 ("Defendant denied Plaintiff's request for accommodation to use the bathroom due to [] anti-Black animus").) In Plaintiff's response to Defendant's motion to dismiss, he merely reasserts that his supervisors "den[ied] him an accommodation for his disability on the basis of race" and "suspend[ed] Plaintiff in a humiliating and embarrassing way due to [his] race." (Pl.'s Resp., Dkt. 22, at ECF 3.)

But Plaintiff does not allege any facts to support the inference that Defendant's actions relating to his suspension, disciplinary hearing, termination attempts, and denials of accommodation stemmed from race-based discrimination. He simply concludes that his mistreatment by Hispanic supervisors was racially discriminatory because he is Black. "That type of reasoning . . . is more than a legal conclusion which this Court is not required to credit: it is a logically-flawed statement." *Forde v. Empire State Coll.*, No. 10-CV-9446 (CM) (THK), 2011

WL 4376499, at *3 (S.D.N.Y. Sept. 19, 2011).   Because Plaintiff's "[n]aked assertions of discrimination" lack "any specific factual allegation of a causal link between [Defendant's] conduct and [Plaintiff's] protected characteristic," they "are too conclusory to withstand a motion to dismiss."   *See Amaya*, 295 F. Supp. 3d at 220 (quotations and alterations omitted); *accord Rivera-Powell*, 470 F.3d at 470.

At most, Plaintiff alleges with respect to the denial of vacation leave, that "[Maldonado and Marrero], both of whom are Hispanic, denied [his] request for vacation in favor of two less-senior officers" who are Hispanic.  (Pl.'s Resp., Dkt.22, at ECF 2; *see also* Am. Compl., Dkt. 16, ¶ 117); *see Littlejohn*, 795 F.3d at 312 (explaining that an inference of discrimination can arise from circumstances that include "the more favorable treatment of employees not in the protected group").   However, even if this allegation could "plausibly give rise to an inference" of discrimination, *Vega*, 801 F.3d at 87 (emphasis removed), as noted, the denial of vacation time "does not generally rise to the level of an adverse employment action."   *Chukwuka*, 795 F. Supp. 2d at 261 (citation omitted).  Here, the Amended Complaint does not provide "any indication that there was an absolute prohibition against [P]laintiff taking any vacation time," *id.* (quotations omitted), and the Court finds that the denial of a single vacation request simply does not constitute an adverse employment action.   Nor are Plaintiff's allegations about two Hispanic employees being treated more favorably with respect to vacation time sufficient to support an inference of discriminatory intent with respect to the previously discussed adverse employment actions.

Plaintiff therefore cannot sustain his Title VII discrimination claim, which must be dismissed.[5]

---

[5] And although, "[o]rdinarily, whether two employees are similarly situated presents a question of fact," *Brown*, 756 F.3d at 230 (quotations and alterations omitted), the Amended Complaint suggests that Plaintiff and the other two employees were *not* comparable.  As Plaintiff

## II.      Title VII Retaliation

Plaintiff alleges Defendant violated Title VII by retaliating against him for complaining about race discrimination.  Defendant moves to dismiss Plaintiff's Title VII retaliation claims on the basis that "Plaintiff fails to establish but-for causation" between his engagement in a protected activity and an adverse employment action.  (Def.'s Reply, Dkt. 21, at 6.)

### A.      Legal Standard

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ."  42 U.S.C. § 2000e–3(a).  "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e–3(a)).  A "plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as she can establish that she possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 16 (2d Cir. 2013) (quotations and brackets omitted).

"[I]n the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of

---

admits, the first employee whose vacation request Defendant granted performed only "some of the same duties as Plaintiff." (Am. Compl., Dkt. 16, ¶ 50.) And although the second employee, Maxil, received vacation time after the January 19, 2019 deadline to submit vacation requests, Plaintiff does not allege Maldonado was on vacation during that time, which is the reason Marrero told Plaintiff his request was denied (*id.* ¶ 47). *See Sosa*, 368 F. Supp. 3d at 499 ("Plaintiff must do more than make conclusory legal allegations that she is substantially similar to her colleagues in order to adequately plead this claim.").

discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII," because "the antiretaliation provision, unlike the substantive discrimination provision, is not limited to discriminatory actions that affect the terms and conditions of employment."  *Id.* (brackets omitted) (quoting *Burlington*, 548 U.S. at 64).

"As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity."  *Id.* (citing 42 U.S.C. § 2000e–3(a)).  "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  "Unlike Title VII discrimination claims, . . . [i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision."  *Vega*, 801 F.3d at 90–91 (citation omitted).  "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Id.* at 91 (quotations and brackets omitted).

"A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."  *Id.* at 90 (citations omitted).  "Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).  "Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it

15

has] previously held that five months is not too long to find the causal relationship." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

"[A]n inference of causation is defeated (1) if the allegedly retaliatory [action] took place at a temporal remove from the protected activity; or (2) if there was an intervening causal event that occurred between the protected activity and the allegedly retaliatory [action]." *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005). Thus, "[a]n intervening event between the protected activity and the adverse employment action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference." *Joseph v. Marco Polo Network, Inc.*, No. 09-CV-1597 (DLC), 2010 WL 4513298, at *18 (S.D.N.Y. Nov. 10, 2010); *see also Lampros v. Banco do Brasil, S.A.*, No. 10-CV-9576 (DLC), 2012 WL 6021091, at *11 (S.D.N.Y. Dec. 4, 2012) (noting that "the undisputed existence of a material intervening event" may "severely diminish[] any inference that may be suggested by [a] temporal proximity"), *aff'd*, 538 F. App'x 113 (2d Cir. 2013).

### B.       Plaintiff Adequately Pleads Title VII Retaliation

Plaintiff alleges that "on January 19, 2019, [he] openly verbally complained about discriminatory conduct that he had been experiencing, i.e. that [] Maldonado and [] Marrero denied his vacation requests in favor of other Hispanic officers because of [his] race . . . ." (Am. Compl., Dkt. 16, ¶ 79.) Plaintiff then "submitted a written statement to [Defendant's Director of Public Safety] about the harassment, discrimination, and retaliation." (*Id.* ¶ 80.)

On January 30, 2019, Plaintiff called the HR Director and requested a bathroom break because he was "going to soil [him]self." (*Id.* ¶ 89.) Defendant did not grant the request, and Plaintiff soiled himself at his post. (*Id.* ¶ 91.) "Plaintiff called dispatch and informed the dispatcher that . . . he had soiled himself." (*Id.* ¶ 92.) After lunch, Maldonado called Plaintiff into "the

office," where Maldonado and the HR Director gave Plaintiff a letter stating that he was suspended 30 days pending investigation and was "subject to termination." (*Id.* ¶¶ 94–96.)

"On or about March 10, 2019," Defendant "claim[ed] [Plaintiff] exposed himself and urinat[ed] at his post." (*Id.* ¶ 100.)   "Defendant subjected Plaintiff to a . . . disciplinary hearing before an independent arbitrator" (*id.* ¶ 104), after which "Plaintiff was permitted to return to work" when the charges were "unsubstantiated" (*id.* ¶ 105).

Defendant does not dispute that the complaint was a "protected activity," *see Littlejohn*, 795 F.3d at 316,[6] or that it subsequently "took an adverse employment action[] against [Plaintiff]" under the standard applicable to retaliation claims, *see Vega*, 801 F.3d at 90.   Further, the brief temporal proximity between Plaintiff's complaint about race-based discrimination on January 19, 2019 and his suspension on January 30, 2019, is, at the pleading stage, "sufficient to establish the requisite causal connection." *See Kaytor*, 609 F.3d at 552.

Defendant relies on *Mauze v. CBS Corp.*, No. 15-CV-4905 (RJD) (SLT), 2019 WL 8137641, at *3 (E.D.N.Y. Jan. 23, 2019), and *Fraser v. Fiduciary Tr. Co. Int'l*, No. 04-CV-6958 (PAC), 2009 WL 2601389, at *6 (S.D.N.Y. Aug. 25, 2009), *aff'd*, 396 F. App'x 734 (2d Cir. 2010), to argue that Plaintiff "ignores the fact that [the adverse actions] were taken on the same day he soiled himself at his post," and that "[t]his intervening event"—Plaintiff soiling himself—"defeats any inference of causation." (Def.'s Reply, Dkt. 21, at 6 (emphasis removed).)   As noted, Defendant is right that "the undisputed existence of a material intervening event" may "severely

---

[6] That the denial of vacation was not unlawful discrimination under Title VII does not prevent Plaintiff's complaint about that event from being protected activity, because, as noted, a "plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as she can establish that she possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Kelly*, 716 F.3d at 16 (quotations and brackets omitted).

diminish[] any inference that may be suggested by [a] temporal proximity." *Lampros*, 2012 WL 6021091, at *11. In *Mauze*, for example, the court granted summary judgment to the defendant on a retaliation claim because the evidence showed that the plaintiff "fail[ed] to communicate with her colleagues and to obey direct orders from her supervisor." 2019 WL 8137641, at *3. It explained that, "on th[e] record, a reasonable fact-finder could only conclude that [the plaintiff] was terminated due to her unprofessional and disruptive behavior which impeded her colleagues' abilities to complete urgent tasks during one of the busiest weeks of the year, not because she filed an EEOC complaint." *Id.* at *4. Likewise, in *Fraser*, the court granted summary judgment after determining that although "[t]emporal proximity between the protected activity and the adverse action is a significant factor in considering a circumstantial showing of causation," a one-month proximity was insufficient given the evidence that the defendant fired the plaintiff only after an investigation revealed "that he was attempting to establish an unauthorized hedge fund and market it to [the defendant's] clients." 2009 WL 2601389, at *6.

Here, however, Plaintiff exposing, and urinating on, himself at his post—the alleged ground for his 30-day suspension—is not an "undisputed . . . material intervening event." *Lampros*, 2012 WL 6021091, at *11. Unlike in *Mauze* and *Fraser*, which were decided on summary judgment, the Court here must accept the allegations in the Amended Complaint as true. While Plaintiff alleges that he soiled himself, he does not admit to exposing himself, and the Court cannot find at this stage that "a reasonable fact-finder could *only* conclude" that Plaintiff's soiling himself was the reason for his suspension, *see Mauze*, 2019 WL 8137641, at *4 (emphasis added), especially without any allegation that, for example, Defendant had a policy prohibiting such

accidental behavior.[7]  Even if Plaintiff's soiling himself is one *conceivable* explanation for his termination, that does not foreclose the plausibility of his Title VII retaliation claim.

Further, Plaintiff argues that his suspension was not the only way in which Defendant retaliated against him, and that even Defendant's refusal to grant him a bathroom break (causing him to soil himself) constituted an adverse employment action taken in retaliation for Plaintiff's engagement in protected activity.  This act, even if insufficient to constitute an adverse employment action for a Title VII discrimination claim, could be sufficient for purposes of a Title VII retaliation claim.  *See Vega*, 801 F.3d at 90 (explaining that the definition of "adverse employment action" in the context of Title VII retaliation claims "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII," because "the antiretaliation provision, unlike the substantive discrimination provision, is not limited to discriminatory actions that affect the terms and conditions of employment." (brackets omitted) (quoting *Burlington*, 548 U.S. at 64)).  At a minimum, Defendant cannot justify an adverse employment action (the suspension) by identifying an intervening event (Plaintiff soiling himself) that Plaintiff alleges was caused by Defendant and stemmed from retaliation (denying Plaintiff a needed bathroom break).

Plaintiff therefore sufficiently alleges a Title VII retaliation claim, and that claim will proceed.

### III.   Rehabilitation Act Discrimination

Plaintiff alleges Defendant discriminated against him based on a disability in violation of the Rehabilitation Act.  Defendant moves to dismiss Plaintiff's Rehabilitation Act claim on the

---

[7] Although months later Defendant charged Plaintiff with exposing himself and urinating at his post, (Am. Compl., Dkt. 16, ¶ 100), there is no indication that Defendant believed Plaintiff had done so when it suspended him.

bases that the Amended Complaint does not allege that Plaintiff is disabled under the Act, or that he suffered an adverse employment action.  (Def.'s Mot., Dkt. 17, at 2–3.)

### A.     Legal Standard

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . , shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).[8]  "A plaintiff may base her [Rehabilitation Act] discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation."  *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016); *accord Kleyman v. SUNY Downstate Med. Ctr.*, No. 18-CV-3137 (PKC) (ST), 2020 WL 5645218, at *12 (E.D.N.Y. Sept. 21, 2020) ("[F]ailure to accommodate may . . . be an element of an adverse-employment-action-based discrimination claim in addition to forming an independent cause of action.").

"To establish a prima facie case of discriminatory termination in violation of the Rehabilitation Act" under a disparate treatment theory, "a plaintiff must show (1) that the plaintiff is handicapped within the meaning of the Act; (2) that the plaintiff is otherwise qualified to perform the job; (3) that the plaintiff was discharged because of his or her handicap; and (4) that the employer is a recipient of federal financial assistance."  *Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003).  "To establish a *prima facie* case of discrimination based on an employer's failure to accommodate a disability, . . . a plaintiff must demonstrate that" (1) "the plaintiff is a person

---

[8] Where, as here, "the subtle distinctions between the [Rehabilitation Act and Americans with Disabilities Act] are not implicated," courts in this Circuit "treat claims under the two statutes identically."  *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (quotations omitted).

with a disability under the meaning of the statute in question;" (2) "an employer covered by the statute had notice of his disability;" (3) "with reasonable accommodation, plaintiff could perform the essential functions of the job at issue;" and (4) "the employer has refused to make such accommodations." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (quotations and brackets omitted), *cert. denied*, 140 S. Ct. 2668 (2020). "In addition, a plaintiff must show the *connections* between (1) the failure to accommodate a disability, (2) the performance deficiencies, and (3) the adverse employment action." *Id.* (quotations omitted) (emphasis in original).

### 1.   Disability

A person has a qualifying disability if he or she has (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such an impairment"; or (3) is "regarded as having such an impairment."[9] 42 U.S.C. § 12102(1); *see also* 29 U.S.C. § 705(20)(B). "Major life activities include 'caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Veldran v. Dejoy*, 839 F. App'x 577, 579 (2d Cir. 2020) (summary order) (quoting 45 C.F.R. § 84.3(j)(2)(ii)). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting," but "not every impairment will constitute a disability." *Id.* (quoting 29 C.F.R. § 1630.2(j)(ii)).

"Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the

---

[9] "Alleging the existence of a medical condition alone, even a serious one, is insufficient to establish a disability within the meaning of the ADA without alleging that the condition substantially limits a major life activity." *Eisenberg v. County of Nassau*, No. 18-CV-1742 (JMA) (SIL), 2019 WL 4247283, at *3 (E.D.N.Y. Aug. 30, 2019) (quotations and brackets omitted).

existence of any actual or expected permanent or long term impact." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005) (citing 29 C.F.R. § 1630.2(j)(2)); *see also St. Amour v. Lawrence & Mem'l Corp.*, No. 09-CV-01055 (JAM), 2016 WL 4744120, at *5 (D. Conn. Sept. 12, 2016) ("[T]he permanent or long term impact of or resulting from the impairment is a factor that informs whether that impairment substantially limits a major life activity, but a plaintiff need not have a permanent disability (or suffer permanent injuries from that disability) to be entitled to the protections of the ADA."[10] (quotations omitted)). Although "the effect [of an injury] on a plaintiff's ability to walk must be fairly significant before he or she will be determined disabled," *Potenza v. City of New York*, 95 F. App'x 390, 391 (2d Cir. 2004) (summary order), the inability to stand for extended periods can be a substantially limiting impairment in some circumstances.[11]

---

[10] "The Rehabilitation Act takes its definition of 'disability' from the Americans With Disabilities Act[.]" *Mazzeo v. Mnuchin*, 751 F. App'x 13, 15 (2d Cir. 2018) (summary order).

[11] *Compare, e.g., Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1513 (2d Cir. 1995) (concluding that the plaintiff was disabled even though she "performed her job duties successfully," because she "[wore] a brace on her left knee[,] she [could not] stand for extended periods, [] she [could not] climb or descend stairs without difficulty[, and] [h]er condition severely limit[ed] her ability to walk long distances either at one time or during the course of a day" (quotations omitted)); *Urena v. Swiss Post Sols., Inc.*, No. 16-CV-1998 (LGS), 2016 WL 5173389, at *5 (S.D.N.Y. Sept. 21, 2016) (declining to dismiss a complaint where the plaintiff alleged that she was instructed "that upon returning to work [from an invasive surgery], she could not stand or sit for prolonged periods, or lift heavy objects"); *Picinich v. United Parcel Serv.*, 321 F. Supp. 2d 485, 502 (N.D.N.Y. 2004) (concluding that the plaintiff "established as a matter of law that at all relevant times he was a disabled individual" when a doctor explained that the plaintiff was "unable to stand, sit, or walk for, at most, 30 minutes at a time"), *with Rosa v. Brink's Inc.*, 103 F. Supp. 2d 287, 290 (S.D.N.Y. 2000) (finding that the plaintiff was not disabled despite her inability to clean her house properly; walk, sit, stand for long periods without some undefined pain; or engage in sports such as biking, scuba diving, camping, hiking, and riding horses); *Zuppardo v. Suffolk Cnty. Vanderbilt Museum*, 19 F. Supp. 2d 52, 56 (E.D.N.Y. 1998) (finding that the plaintiff was not disabled in part because he "testified in his deposition that he [was] able to care for himself, walk some distances, navigate stairs, perform his non-sedentary work duties, and even climb" and was "only sporadically symptomatic[,] and [] the pain he occasionally suffer[ed] from when walking [was] controllable with medication"), *aff'd*, 173 F.3d 848 (2d Cir. 1999); *Kelly v. Drexel Univ.*, 94 F.3d 102, 106–09 (3d Cir. 1996) (finding that a plaintiff who did not require crutches or a cane, despite trouble climbing stairs or walking any significant distances, was not substantially limited in his ability to walk). *Cf. Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 70 (2d Cir. 2014) ("[T]he

2.     Adverse Employment Action

"Discrimination claims brought under the [Rehabilitation Act] are analyzed in the same way as such claims brought under . . . Title VII." *Sosa*, 368 F. Supp. 3d at 523.  The Rehabilitation Act "requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." *Natofsky*, 921 F.3d at 348.  "[A] plaintiff alleging disability discrimination under the [Rehabilitation Act] pursuant to a theory that his employer took adverse employment action against him due to his disability may demonstrate circumstances giving rise to an inference of discrimination through evidence of overt discriminatory conduct or disparate treatment." *Murtha v. New York State Gaming Comm'n*, No. 17-CV-10040 (NSR), 2019 WL 4450687, at *11 (S.D.N.Y. Sept. 17, 2019).  "The causal relationship between disability and decision need not be direct, in that causation may be established if the disability caused conduct that, in turn, motivated the defendant to act . . . ." *Sandler v. Benden*, No. 15-CV-1193 (SJF) (AKT), 2016 WL 9944017, at *18 (E.D.N.Y. Aug. 19, 2016) (brackets omitted) (quoting *Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir. 1994)), *aff'd*, 715 F. App'x 40 (2d Cir. 2017).  "[H]owever, to satisfy the 'solely' part of the 'solely by reason of' element, the disability must have been the only cause of the defendant's conduct."  *Id.* (alterations omitted) (quoting *Sedor*, 42 F.3d at 746).  "As with other discrimination claims, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage." *Sosa*, 368 F. Supp. 3d at 523 (quotations omitted).

---

inability to sit even for a prolonged period of time *may* be a disability depending on the totality of the circumstances . . . .").

B.     **Plaintiff Adequately Pleads Rehabilitation Act Discrimination**

For the reasons below, Plaintiff adequately pleads that he suffers from a disability and Defendant took an adverse employment action against him as a result.

1.     Plaintiff Adequately Alleges a Disability

Plaintiff alleges his ability to stand is substantially limited by a cyst in his left foot.  (Am. Compl., Dkt. 16, ¶ 12.)  In 2019, a Workers Compensation Judge determined that Plaintiff had lost 20% of the use of his left foot.  (*Id.* ¶ 25.)  This "substantially limit[s] his ability to stand and walk."  (*Id.* ¶ 62.)  Plaintiff has received medical treatment for his foot condition, and doctors have "not[ed] that he would sometimes need to sit to relieve some of the pain."  (*Id.* ¶ 64.)  Plaintiff's duties as a Peace Officer "sometimes require standing for long periods of time," however, as evidenced by Maldonado's refusal to let Plaintiff use a chair.  (*Id.* ¶¶ 26, 76.)

As noted, "[m]ajor life activities include . . . walking . . . and working," *Veldran*, 839 F. App'x at 579 (quotations omitted), and the inability to stand or sit for extended periods can be a substantially limiting impairment, *see, e.g.*, *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1513 (2d Cir. 1995); *Urena v. Swiss Post Sols., Inc.*, No. 16-CV-1998 (LGS), 2016 WL 5173389, at *5 (S.D.N.Y. Sept. 21, 2016); *Picinich v. United Parcel Serv.*, 321 F. Supp. 2d 485, 502 (N.D.N.Y. 2004).  Although the Amended Complaint does not allege Plaintiff is unable to walk or work altogether, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  *Veldran*, 839 F. App'x at 579 (quoting 29 C.F.R. § 1630.2(j)(ii)).

As for the "duration or expected duration" of Plaintiff's impairment, "and the existence of any actual or expected permanent or long term impact," *see Capobianco*, 422 F.3d at 57, the Amended Complaint alleges that Plaintiff filed his Workers Compensation claim in 2015 (*see* Am. Compl., Dkt. 16, ¶ 25) and continued to suffer from the same condition in 2019 (*see id.* ¶¶ 71–72).

Given Plaintiff's limited burden at the pleading stage, these allegations plausibly suggest he suffered from a long-term disability under the Rehabilitation Act.

Defendant relies on *Lee v. Sony BMG Music Ent., Inc.*, 557 F. Supp. 2d 418, 425 (S.D.N.Y. 2008), to argue that "Plaintiff's failure to identify his disability justifies the dismissal of his claim." (Def.'s Reply, Dkt. 21, at 3.)  In *Lee*, the court dismissed the plaintiff's disability discrimination claim because the complaint "[did] not even [identify] what her disability [was]," but "merely state[d] that she (1) suffered unspecified 'back, neck, and psychological injuries' following [an] altercation with [her supervisor], and (2) and was 'forced to go on leave' because of the 'emotional stress' of working in a hostile work environment."  557 F. Supp. 2d at 425.  The court explained that the "[p]laintiff's inability to work under a particular supervisor [did] not give rise to an independent claim for disability discrimination."  *Id.*

Here, by contrast, Plaintiff's Amended Complaint specifies his disability.  Plaintiff claims that his ability to stand was substantially limited by a cyst in his left foot (Am. Compl., Dkt. 16, ¶ 12), and that a Workers Compensation Judge determined that he had lost 20% of the use of his left foot (*id.* ¶ 25).  This differs materially from the *Lee* plaintiff's allegations of "unspecified 'back, neck, and psychological injuries'" and the "'emotional stress' of working in a hostile work environment."  557 F. Supp. 2d at 425.

Next, Defendant cites *George v. TJX Companies, Inc.*, No. 08-CV-275 (ARR) (LB), 2009 WL 4718840, at *7 (E.D.N.Y. Dec. 9, 2009), to argue that Plaintiff's successful performance of his Peace Officer duties "constitutes 'strong evidence' that his ability to work is not substantially limited."  (Def.'s Reply, Dkt. 21, at 3 (quoting *George*, 2009 WL 4718840, at *7).)  In *George*, the plaintiff "fractured his right humerus—his upper arm—and was therefore unable to work for about two months," after which "his treating physician examined his arm and prepared a note for

plaintiff's employers stating that plaintiff could return to work (where he perform[ed] lifting and other manual tasks) without any restrictions." 2009 WL 4718840, at *7. The court granted summary judgment because "there [was] no evidence in the record to support a finding that [the] plaintiff's fractured arm would not heal within six months," making it "[a] transitory impairment" rather than a disability. *Id.* at *8 (citing 42 U.S.C. § 12102(3)(B) ("A transitory impairment is an impairment with an actual or expected duration of 6 months or less.")).

*George* is inapposite. Unlike *George*, this case does not involve a summary judgment record. Although the Amended Complaint alleges that Plaintiff has remained qualified to perform his job "and remains a well-liked and respected employee" (Am. Compl., Dkt. 16, ¶¶ 27–29), it also alleges that his duties sometimes require standing, and that the "extreme pain in his left foot and leg" (*id.* ¶ 26) "substantially limit[s] his ability to stand and walk" (*id.* ¶ 62). Further, Plaintiff asserts that his doctors have "not[ed] that he would sometimes need to sit to relieve some of the pain." (*Id.* ¶ 64.) Finally, as explained, Plaintiff's condition persisted at least from 2015 to 2019. (*See id.* ¶¶ 25, 71–72.) This case thus differs from *George*, where "there [was] no evidence in the record to support a finding that [the] plaintiff's fractured arm would not heal within six months." 2009 WL 4718840, at *8.[12]

Defendant also relies on *Rodriguez v. DeBuono*, 44 F. Supp. 2d 601, 617 (S.D.N.Y.), *rev'd sub nom. Rodriguez v. City of New York*, 197 F.3d 611 (2d Cir. 1999), where the court noted that "[i]ntermittent, episodic impairments are not disabilities, the standard example being a broken leg." (Def.'s Reply, Dkt. 21, at 3 (quoting *Rodriguez*, 44 F. Supp. 2d at 617).) As noted, however,

---

[12] And regardless of whether Plaintiff could *work* despite his injury and medication, "[m]ajor life activities include . . . walking . . . [as well as] working.'" *Veldran*, 839 F. App'x at 579 (quoting 45 C.F.R. § 84.3(j)(2)(ii)); *cf. Felix v. New York City Transit Auth.*, 324 F.3d 102, 106 (2d Cir. 2003) ("[A] plaintiff can seek accommodation at work even if the impairment only qualifies as a disability because of a life activity other than working.").

Plaintiff alleges a condition that chronically afflicted him for at least four years, and which resulted in a Workers Compensation finding that he suffered from diminished ability to use his foot. As the court noted in *Rodriguez*, even if "[a] temporary or non-chronic impairment, such as a broken hip, may not be considered a 'disability,'" an improperly-healed broken hip, "resulting in long-term difficulty in walking," might be a disability. *Rodriguez*, 44 F. Supp. 2d at 617. The Amended Complaint does not suggest Plaintiff's foot injury is temporary, and Plaintiff alleges it "substantially limit[s] his ability to stand and walk." (Am. Compl., Dkt. 16, ¶ 62.) Plaintiff thus adequately alleges a disability.

2.   <u>Plaintiff Adequately Alleges an Adverse Employment Action</u>

Plaintiff's Amended Complaint also plausibly alleges that Defendant took an adverse employment action against him because of his alleged disability. Plaintiff claims Defendant suspended him for soiling himself at his post. Defendant agrees, pointing out that Plaintiff "was suspended from work . . . *on the same day* he soiled himself at his post." (Def.'s Reply, Dkt. 21, at 6.)

Defendant nevertheless argues that, "[a]s with his Title VII discrimination claims, Plaintiff does not allege an adverse employment action." (*Id.* at 4.) As noted, however, suspensions can be adverse employment actions. *See, e.g.*, *Lovejoy–Wilson*, 263 F.3d at 223–24 (finding a suspension without pay for one week to be an adverse employment action). At the pleading stage, Plaintiff's allegation that he was suspended for 30 days suffices.

Defendant also appears to argue—albeit implicitly—that firing Plaintiff for soiling himself due to his incontinence does not amount to firing him for his alleged disability—i.e., his foot condition. (*See* Def.'s Reply, Dkt. 21, at 2 ("[I]ncontinence does not constitute a disability").) But assuming this is Defendant's contention, the Court disagrees. Plaintiff plausibly alleges that his incontinence stemmed from the medications he took for his foot condition. (*See* Am. Compl., Dkt.

27

16, ¶ 84 (alleging that "Plaintiff's medications caused him to have incontinence issues").)  Plaintiff

also alleges facts plausibly suggesting that Defendant knew of this connection.  (*See id.* ¶¶ 60–61,

68 (alleging that Defendant participated in Plaintiff's Workers Compensation proceedings and had

access to his medical records), ¶¶ 84–85 (alleging that Plaintiff "asked an HR representative named

Cassandra about the use of bathroom breaks due to his incontinence").)  The Amended Complaint

therefore asserts that Plaintiff's "disability caused conduct that, in turn, motivated the defendant

to act." *Sandler*, 2016 WL 9944017, at *18 (brackets omitted) (quoting *Sedor*, 42 F.3d at 746).

That is, Plaintiff suffered an adverse employment action "'because of' manifestations of [his]

disability." *See Doe v. Norwich Free Acad.*, No. 10-CV-1171 (SRU), 2012 WL 5383343, at *4

(D. Conn. Oct. 31, 2012).  At the motion to dismiss stage, where Plaintiff "need only give plausible

support to a minimal inference of discriminatory motivation," *Sosa*, 368 F. Supp. 3d at 523

(quotations omitted), his Rehabilitation Act discrimination claim is therefore adequately alleged.

*See, e.g.*, *Beaton v. Metro. Transportation Auth. New York City Transit*, No. 15-CV-8056 (ER),

2016 WL 3387301, at *7 (S.D.N.Y. June 15, 2016) (finding "plausible that the [plaintiff's]

termination was motivated by [his] disability," despite his apparent sleeping on the job, because

he told his employer he "appeared to be sleeping on the job because of medication required by his

disability").[13]

---

[13] *See also Scotto v. City of New York*, No. 18-CV-04228 (LTS), 2019 WL 6701919, at *5 (S.D.N.Y. Dec. 9, 2019) (declining to dismiss disability discrimination claims because the allegations were "sufficient to support an inference that [the defendant's] actions in response to the [plaintiff's behavior at a] meeting were motivated by a perception that [plaintiff's] mental health condition rendered him unable to perform his job," rather than from his "performance and actions"); *cf. McMillan v. City of New York*, 711 F.3d 120, 129 (2d Cir. 2013) ("Here, it is undisputed that McMillan was tardy because of his disability and that he was disciplined because of his tardiness.  In other words, McMillan was disciplined because of his disability.").

Plaintiff thus adequately pleads Rehabilitation Act discrimination, and this claim will proceed.[14]

## IV.    Rehabilitation Act Retaliation

Plaintiff alleges that Defendant violated the Rehabilitation Act by retaliating against him for complaining about disability discrimination.   Defendant moves to dismiss Plaintiff's Rehabilitation Act retaliation claim on the basis that the Amended Complaint does not allege that he suffered an adverse employment action because of his complaints.

### A.    Legal Standard

"[T]he elements of a retaliation claim under [the Rehabilitation Act] are" (1) "a plaintiff was engaged in protected activity;" (2) "the alleged retaliator knew that plaintiff was involved in protected activity;" (3) "an adverse decision or course of action was taken against plaintiff;" and (4) "a causal connection exists between the protected activity and the adverse action." *Natofsky*, 921 F.3d at 353 (quotations and brackets omitted).[15]  "Requesting a reasonable accommodation is a protected activity under the [Rehabilitation Act]." *Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 33 (2d Cir. 2019) (summary order) (citing *Weixel v. Bd. of Educ.*, 287 F.3d 138, 149 (2d Cir. 2002)).

---

[14] Although Plaintiff's suspension for soiling himself due to his medication is sufficient "minimal" evidence of discrimination at the motion to dismiss stage, *see Littlejohn*, 795 F.3d at 311, the Court notes that, at the summary judgment stage, a plaintiff's "workplace misconduct is a legitimate and nondiscriminatory reason for [an adverse employment action], even when such misconduct is related to a disability," *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012); *see also Beaton*, 2016 WL 3387301, at *8 (noting that although "the Complaint [met] the minimal threshold that [the plaintiff] face[d] at th[e] [motion to dismiss] stage," the defendant "may very well have evidence of nondiscriminatory reasons for the termination—such as showing that [the plaintiff] engaged in fireable misconduct" (footnotes omitted)).

[15] "Claims for retaliation under the [Rehabilitation Act] are analyzed under the same burden-shifting framework established for Title VII cases." *Widomski v. State Univ. of New York (SUNY) at Orange*, 748 F.3d 471, 476 (2d Cir. 2014) (quotations and brackets omitted).

### B.   Plaintiff Adequately Pleads Rehabilitation Act Retaliation

Plaintiff alleges that around January 17, 2019, Maldonado denied his request to use a chair at his post.  (Am. Compl., Dkt. 16, ¶¶ 71–76).  "At roll call on January 19, 2019, Plaintiff openly verbally complained" that Maldonado "had been harassing him by denying [his] request for accommodation and removing the chair he needed at his post due to his disability."  (*Id.* ¶ 79.) Plaintiff also submitted a "written statement" to Defendant's Director of Public Safety.  (*Id.* ¶ 80.)

On January 30, 2019, Plaintiff soiled himself at his post after Defendant denied his request to use the bathroom.  (*Id.* ¶¶ 81, 86–92.)  Maldonado and the HR Director suspended Plaintiff for 30 days "pending investigation and subject to termination."  (*Id.* ¶ 96.)  In March 2019, "Defendant proffered . . . charges against Plaintiff, claiming he exposed himself and urinat[ed] at his post." (*Id.* ¶ 100.)

Defendant does not dispute that Plaintiff's complaint on January 19, 2019 was a protected activity.  Nor does it contest that Plaintiff's 30-day suspension was an adverse employment action. Rather, it contends that "any temporal proximity between [Plaintiff's] purported complaints and his suspension and disciplinary charges is undercut by the allegation that these actions were taken immediately after he soiled himself at his post," and therefore that "Plaintiff fails to demonstrate but-for causation."  (Def.'s Mot., Dkt. 17, at 3.)

The Court disagrees for the reasons specified above—namely, Plaintiff was suspended 11 days after complaining about Defendant's failure to accommodate his disability, and Defendant has not shown that "a reasonable fact-finder could *only* conclude" that Plaintiff's soiling himself was the reason for his suspension.  *See Mauze*, 2019 WL 8137641, at *4 (emphasis added).  And, as previously discussed, a jury might also find that the denial of the bathroom break, which led to the soiling incident, was retaliation for Plaintiff complaining about the denial of an accommodation for his foot-related disability.  That Defendant suspended Plaintiff or denied him a bathroom break

for complaining about the denial of his request to use a chair at work is at least plausible, even if there is another possible reason.  Plaintiff thus states a claim for Rehabilitation Act Retaliation.

## V.    Hostile Work Environment

Plaintiff alleges that Defendant subjected him to a hostile work environment under Title VII and the Rehabilitation Act due to his race and disability.  Defendant moves to dismiss on the ground that Plaintiff does not allege that he suffered severe, pervasive, continuous, or concerted harassment because of his race or disability.

### A.    Legal Standard

"Title VII prohibits an employer from discriminating in 'compensation, terms, conditions, or privileges of employment, because of an individual's race, color, religion, sex or national origin.'"  *Littlejohn*, 795 F.3d at 320 (quoting 42 U.S.C. § 2000e–2(a)(1)) (brackets omitted).  "The phrase terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment, which includes requiring people to work in a discriminatorily hostile or abusive environment."  *Id.* (quotations and alterations omitted).  The Second Circuit has explained that "disabled Americans should be able to assert hostile work environment claims under the ADA . . . [like] those protected by Title VII under that statute . . . ."  *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (citation and quotations omitted).  Likewise, "[t]he standard for demonstrating a hostile work environment is the same under Title VII [and] the Rehabilitation Act . . . ."  *Zabar v. New York City Dep't of Educ.*, No. 18-CV-6657 (PGG), 2020 WL 2423450, at *6 n.7 (S.D.N.Y. May 12, 2020).

"To prevail on a hostile work environment claim," a plaintiff "must show (1) that the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer."  *Fox*, 918 F.3d at 74 (quotations and brackets omitted).

31

Harassment is sufficiently severe or pervasive when "the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations omitted). "Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be severe or pervasive enough to create an objectively hostile or abusive work environment." *Fox*, 918 F.3d at 74 (quotations omitted).

"As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (quotations omitted). Still, "[e]ven an isolated act may be so serious that it requires the conclusion that the terms and conditions of employment were altered." *Fox*, 918 F.3d at 74. "A plaintiff . . . therefore[] must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.* (quotations omitted). "Courts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of 'the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the plaintiff's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23) (brackets omitted). "Legitimate reprimands by an employer are not abuse." *Id.* at 75.

## B.     Plaintiff Adequately Pleads Hostile Work Environment

Plaintiff alleges Defendant subjected him to a hostile work environment by "denying him vacation requests, subjecting him to harassment, intimidation, and bullying, denying requests for accommodations, retaliating against him for making . . . complaints . . . , and subjecting him to . . . suspensions and attempted termination." (Am. Compl., Dkt. 16, ¶ 126.)

As discussed, the Amended Complaint contains at most one non-conclusory allegation of disparate treatment based on race—that Defendant denied Plaintiff a vacation day—which did not

amount to an adverse employment action. This was "a mild, isolated incident" that "does not make a work environment hostile." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quotations omitted).[16]

Whether the Amended Complaint alleges events so "severe or pervasive" as to establish a hostile working environment on the basis of Plaintiff's alleged disability is a closer call. With respect to his requests for disability accommodations, Plaintiff alleges only that, on one occasion, Maldonado denied his request to use a chair (Am. Compl., Dkt. 16, ¶ 76), and that, on another, Defendant denied his request to use the bathroom (*id.* ¶ 91). Nonetheless, given that these events occurred close in time, were the acts of supervisors and not simply co-workers, and led to an incident that the same supervisors used to suspend Plaintiff for 30 days, the Court finds that the Amended Complaint "meets the threshold, though barely," of alleging facts from which a reasonable jury could find that Plaintiff "suffered severe and pervasive discriminatory conduct while employed" at CUNY. *See Bacchus v. New York City Dept. of Educ.*, 137 F. Supp. 3d 214, 241–42 (E.D.N.Y. 2015) (allowing a hostile work environment claim to proceed at the summary judgment stage in part because Title VII and New York State Human Rights Law discrimination claims were also going forward based on the same evidence); *see also Thibodeaux v. Travco Ins. Co.*, 13-CV-5599 (ERK) (VVP), 2014 WL 354656, at *2 (E.D.N.Y. Jan. 31, 2014) ("If one of a

---

[16] As noted, the Amended Complaint contains many conclusory allegations of race discrimination that the Court is "not required to credit," *Rothstein*, 708 F.3d at 94. (*See, e.g.*, Am. Compl., Dkt. 16, ¶ 32 (alleging that "Plaintiff has had to report numerous instances of workplace harassment, discrimination, hostile work environment and retaliation"), ¶ 44 (alleging that, "Plaintiff has continued to suffer forms of illegal discrimination and retaliation . . . . [Defendant] has continued to exhibit discriminatory animus towards Plaintiff due to his race"), ¶ 57 (asserting that Maldonado and Marrero "targeted Plaintiff for negative treatment based on [his] race and his history of complaints regarding harassment and discrimination"), ¶ 58 (claiming that Maldonado and Marrero "treated Plaintiff less favorably in the terms and conditions of his employment as compared to his similarly situated Hispanic co-workers . . . because of his race").)

number of integrally related causes of action have to be tried, it makes little sense to grant a motion to dismiss as one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted.")).[17]

Plaintiff's hostile work environment claim will proceed.

## CONCLUSION

Defendant's motion to dismiss is granted in part and denied in part.  Plaintiff's Title VII discrimination claim is dismissed.   His Title VII retaliation claim, Rehabilitation Act discrimination claim, Rehabilitation Act retaliation claim, and hostile work environment claim will all proceed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  August 13, 2021
         Brooklyn, New York

---

[17] The Court notes that Plaintiff points to complaints he made between 2011 and 2015 about alleged discrimination, harassment, and retaliation, but these allegations do not contain evidence that such misconduct in fact occurred.  *See, e.g.*, *Alfano v. Costello*, 294 F.3d 365, 376 (2d Cir. 2002) (noting that "testimony that [the plaintiff's employer treated her male peers more favorably]—stated in conclusory terms without corroborating detail—[was] insufficient to support a finding that [the employer] imposed a burden on her because she was a woman").  The Court similarly declines to credit Plaintiff's conclusory assertions of "harassment, intimidation, and bullying" (Am. Compl., Dkt. 16, ¶ 126) insofar as he fails to connect those claims to any facts in the Amended Complaint.  *See, e.g.*, *Alfano*, 294 F.3d at 376.

34